UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES HICKS,

    Plaintiff,

v.

BRAD HAYNIE, et al.,

    Defendants.
_____/

Case No. 1:19-cv-6

Honorable Hala Y. Jarbou

## **ORDER**

This is a civil rights action filed by a former prisoner who claims that Defendants, current and former employees of the Michigan Department of Corrections, failed to protect him from harm by other prisoners and retaliated against him for reporting misconduct. Defendants filed a motion for summary judgment (ECF No. 114). The magistrate judge issued a report and recommendation (R&R) recommending that the Court grant the motion (ECF No. 123). Before the Court are Defendants' objections to the R&R (ECF No. 124), and his unopposed motion for leave to file amended objections (ECF No. 125). The Court will grant the motion for leave and consider Plaintiff's amended objections (*see* Am. Objection, ECF No. 126).

Under 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court must conduct de novo review of those portions of the R&R to which objections have been made. Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

I. **Exhaustion**

The R&R recommends dismissal of Plaintiff's claims concerning Defendants' failure to protect him, and part of Plaintiff's retaliation claim, because Plaintiff failed to exhaust "available" administrative remedies for those claims, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Specifically, Plaintiff claims that several defendants transferred him to a prison facility where he would be at risk of harm from other prisoners, and then to a particular cell where Plaintiff would be at risk of harm from his cellmate. He also contends that Defendant Davids placed Plaintiff into protective custody from July 21, 2017 to March 28, 2019, for retaliatory reasons. There is no dispute that Plaintiff did not submit any grievances regarding these allegations. The question faced by the magistrate judge and the Court is whether an administrative remedy was available to Plaintiff for his complaints.

Richard Russell, the MDOC's grievance manager, testified that there is no remedy available to a prisoner "who opposes his facility assignment," "who opposes his unit assignment," or "who opposes his cell assignment." (Russell Dep. 17-18, ECF No. 116-27.) According to Russell, "It's not in the grievance process." (*Id.* at 18.) In addition, Warden Mary Berghuis testified that the MDOC's policies did not "allow for a prisoner to grieve his facility assignment." (Berghuis Dep. 22, ECF No. 116-9.)

Nevertheless, the R&R concluded that "the MDOC's grievance process provided Plaintiff an avenue for relief," noting that "[n]othing in the MDOC's grievance policy categorically excludes facility or cell assignments from the grievance procedure or identifies them as non-grievable issues." (R&R 10.) In fact, that policy permits grievances "'regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant[.]'" (*Id.* (quoting MDOC Policy Directive 03.02.130 ¶ E)) "Plaintiff's issue was not simply that he was unhappy with his facility assignment . . . , but that his placement at those

2

facilities created a substantial risk to his safety[.]" (*Id.*)  This complaint "encompassed both policy violations and unsatisfactory conditions of confinement." (*Id.*)  Plaintiff himself conceded that a failure to protect is grievable, as he had grieved that issue on another occasion. (*See* Pl.'s Dep. 247, ECF No. 115-2 ("You can't grieve a transfer.  I grieved a failure to protect.  That what I grieved . . . and that was took all the way up.").)  Plaintiff also filed, and exhausted, a grievance that Defendants placed him in protective custody on a different occasion.  And even Russell conceded that a prisoner could object to the assignment of their cellmate and "get moved if they have a good reason." (Russell Dep. 18.)  He also clarified that, "in every rejection [of a grievance], the merits of the case still have to be reviewed.  And if there is merit, it has to be taken care of." (*Id.* at 24.)

Plaintiff's evidence does not create a genuine issue of material fact about the availability of a remedy.  At best, the combined testimony of Russell and Berghuis suggests that a prisoner cannot expect a remedy for a general complaint about his transfer to, or placement in, a particular prison facility, unit, or cell.  That makes sense because prisoners do not have a freestanding right or justifiable expectation to be housed in a particular cell or at a particular prison facility.  *See Johnson v. CCA-Ne. Ohio Corr. Ctr. Warden*, 21 F. App'x 330, 332 (6th Cir. 2001) (noting that "a prisoner has no right to a particular security level, or placement in a particular prison" (citations omitted)).  Moreover, because transfers are "common among prisons," they are the sort of thing that prisoners are ordinarily expected to endure as part of their incarceration.  *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005).  Accordingly, it stands to reason that a prisoner's opposition to a particular placement, standing alone, is not something that MDOC officials will consider when determining the appropriate housing for a prisoner.

But where a prisoner complains about specific conditions of his confinement and their effect on him, the MDOC's grievance process expressly allows for such a grievance. The thrust of Plaintiff's Eighth Amendment claim is not that he opposed his transfer or his placement in a particular cell as such, but that the particular conditions in which Defendants placed him posed a risk to his safety. Plaintiff acknowledged that an administrative remedy existed for a claim like that one—i.e., a failure to protect him from a risk of harm—and no evidence indicates otherwise. None of the prison officials testified that they would not accept or consider a grievance complaining that being transferred to a particular facility or prison cell posed a risk of harm. Indeed, as the R&R pointed out, this sort of complaint by prisoners is not unusual, and the Court is aware of no other case concluding that the MDOC provides no administrative remedies for such a claim.

Similarly, the thrust of Plaintiff's First Amendment claim is not that he opposed his placement in protective custody as such, but that Defendants put him in that unit for retaliatory reasons. He offers no evidence that such a grievance would be rejected. Indeed, he previously exhausted a claim like that one.

The Court also agrees with the R&R that Plaintiff's position, if adopted by the Court, would have profound consequences. It would swallow the exhaustion requirement for a large swath of civil rights claims raised by prisoners housed by the MDOC. Almost any claim concerning a prisoner's cell conditions could be framed by the plaintiff as a complaint regarding improper housing placement for which no administrative remedy is available and therefore no exhaustion is necessary. The MDOC would have no opportunity to respond to and correct these complaints before a lawsuit is filed, thwarting the reasons for the exhaustion requirement in the PLRA.

In other words, Plaintiff's argument works only by framing his claims in an arbitrarily narrow fashion. He frames them by focusing on his transfer or placement in a particular cell or prison facility rather on Defendants' motive or indifference to a specific risk of harm. His evidence suggests that he has no administrative remedy for a complaint solely about the former, but it makes little sense to state his claims that way because the Constitution is only concerned with the latter.

**A. Objection 1**

In his first objection, Plaintiff contends that the R&R "nullifies the PLRA's statutory exception to mandatory exhaustion." (Am. Objection 2, ECF No. 126.) According to Plaintiff, the R&R "enlarges the PLRA's exhaustion requirement," "omits consideration of key admissions and argument regarding the 'unavailability' of an administrative remedy," and "fails to apply the statutory exception in at least partial consideration of the adverse impact Plaintiff's success would have on the MDOC's grievance policy[.]" (*Id.* at 3.) Plaintiff offers no analysis in his first objection beyond these cursory statements. Indeed, Plaintiff refers to other objections to support these statements; thus, the first objection appears to be more of a summary of Plaintiff's arguments than an objection itself. It will be denied.

**B. Objection 2**

Next, Plaintiff complains that the R&R relied on "inopposite or superseded case law to find that a remedy was 'available' to Plaintiff." (*Id.*) Plaintiff refers to *Hartsfield v. Vidor*, 199 F.3d 305 (6th Cir. 1999), in which the Sixth Circuit stated, "[S]o long as the prison system has an administrative process that will review a prisoner's complaint, even when the prisoner seeks monetary damages, the prisoner must exhaust his prison remedies." *Id.* at 308. The R&R cited *Hartsfield* as supplemental support for the Supreme Court's statement that exhaustion is required "even where the relief sought—monetary damages—cannot be granted by the administrative

5

process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). That principle is still good law. It was not error for the R&R to cite *Hartsfield* for that principle.

Plaintiff rightly contends an administrative remedy must offer *some* relief in order to be available, even if that remedy is not monetary damages. The R&R made that very point, stating, "[T]he Supreme Court has made clear that whether a grievance procedure is available turns on whether it is 'capable of use' to obtain 'some relief for the action complained of.'" (R&R 9 (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016).) The R&R's conclusion is not inconsistent with this rule.

Plaintiff objects to the R&R's conclusion, relying on the testimony of Russell and Berghuis mentioned above. However, the Court agrees with the reasoning of the R&R that their testimony does not create a genuine dispute of fact about the availability of a remedy for claims like Plaintiff's.

**C. Objection 3**

Plaintiff objects to the R&R's statement that "a grievance process is 'available' to a prisoner if a prisoner had access to the grievance process and the prisoner was capable of filing a grievance." (R&R 9.) Plaintiff is correct that a grievance process must also provide the possibility for "some relief" to be an available administrative remedy, as indicated in *Ross*, but the R&R made the foregoing statement as a background principle when summarizing relevant case law; the statement was not the sole legal basis for the R&R's conclusion that summary judgment is warranted in this case. The R&R did not conclude that a remedy was available to Plaintiff simply because he could file a grievance.

Plaintiff also notes that, under *Ross*, an administrative remedy can be unavailable even though it is "officially on the books," such as when it operates as a "dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1853. Or

6

when the administrative scheme is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* In *Ross*, for instance, the prisoner presented evidence that prison officials "routinely dismiss [prison] grievances as procedurally improper when parallel [internal] investigations are pending." *Id.* at 1854. Plaintiff claims that he faced obstacles like those faced by the prisoner in *Ross*. According to Plaintiff's brief, "when he tried to file a grievance for refusal to transfer, he was told he could not file that grievance; it was rejected as non-grievable and returned to him, and continued grievance would subject him to sanction." (Am. Objection 6.)

Plaintiff's evidence does not support his argument. Plaintiff testified that he filed a grievance about the fact that prison officials "refused to transfer" him, and this grievance was rejected. (Hicks Dep. 65, ECF No. 116-8.) Importantly, as noted in the R&R, he did not provide evidence of this grievance or provide other testimony about its contents. In other words, he did not testify that prison officials ever rejected a grievance containing facts like those at issue in his First Amendment or Eighth Amendment claims, and there is no evidence that officials would have done so. On the contrary, Plaintiff testified that he was able to grieve a "failure to protect"; that grievance was not rejected. (*Id.*) The same is true of his grievance concerning retaliation.

Again, Plaintiff's focus on the propriety of a particular placement rather than on the prison official's improper motive or failure to address a risk of harm is misguided. For instance, when a prisoner's safety is at risk, it is incumbent on the prisoner to inform prison staff of the risk, and then raise the issue again in a grievance if necessary. The prison's obligation under the Constitution is to address that risk. Transferring the prisoner elsewhere may be one possible remedy, but it is not the only one. A prison can do many things to protect a prisoner from other prisoners short of transfer to another cell or another facility. Accordingly, rejecting a grievance

7

complaining about a "refusal to transfer" is not equivalent to rejecting a grievance complaining about a failure to protect the prisoner from harm.

### D. Objection 4

Plaintiff objects that the R&R effectively requires a prisoner to state the elements of an Eighth Amendment claim in a grievance as if he were pleading his claim in court, meaning that the prisoner must state sufficient facts to show that the risk he faced was substantial. In particular, the R&R stated that "if Plaintiff simply indicated that he sought a transfer from MCF but did not indicate that his placement at MCF was creating a substantial risk of harm, he would not have properly exhausted his failure-to-protect claim." (R&R 12.) The point here is not that the same standards for pleading an Eighth Amendment claim apply to a grievance, but that the grievance must "give[] fair notice of the misconduct or mistreatment alleged as measured against the claim in the prisoner's lawsuit." *Davis v. Mich. Dep't of Corrs.*, No. 19-2264, 2020 WL 6364583, at *2 (6th Cir. Sept. 1, 2020). Accordingly, a grievance complaining about the denial of a transfer, unaccompanied by any mention of a risk of harm stemming from that denial, would not suffice to exhaust an Eighth Amendment claim. By the same token, evidence of a policy of rejecting grievances that merely "oppose" placement decisions does not suggest that prison officials would reject grievances raising Eighth Amendment concerns.

Plaintiff's reliance on *Malik v. District of Columbia*, 574 F.3d 781 (D.C. Cir. 2009) is misplaced. In that case, the defendants conceded that an "Eighth Amendment claim regarding the conditions of [the plaintiff's] transport was not grievable[.]" *Id.* at 785-86. Defendants have not made such a concession about Plaintiff's Eighth Amendment claim.

Plaintiff also relies on *Bean v. Barnhart*, No. 1:13–cv–196–NT, 2015 WL 39335777 (D. Me. June 26, 2015), in which a court found that the prisoner did not have an available remedy to challenge a placement decision that put him at risk of harm because the grievance policy expressly

8

excluded classification decisions and other decisions that could be appealed. *Id.* at *2. The defendants made an argument like the one set forth in the R&R, which is that a failure-to-protect claim would not be subject to the policy exclusion. But the court in *Bean* reasoned that "[t]he problem for the Defendants is that the Plaintiff's failure-to-protect claim can be characterized either as a claim arising from the 'event' of his attack or as a claim based on a classification decision." *Id.* at *6. Construing the applicable grievance policy, the court concluded that the "most straightforward way to read [it] is that where a claim hinges on a classification decision, the Policy's grievance procedure is not available to inmates." *Id.* at *7.

*Bean* is distinguishable. The policy exclusion in *Bean* expressly encompassed all claims "*regarding* . . . classification procedures and decisions," and the court reasonably read this to apply to all claims that "hinge" on a classification decision. *Id.* (emphasis added). That reasoning makes sense, especially where there is a separate process for challenging classification decisions. But the MDOC's policy does not contain an express exclusion like the one in *Bean*, let alone one that covers all claims "regarding" classification decisions, and the evidence does not indicate that such a broad one exists in practice.

### E. Objection 5

Plaintiff complains that the R&R erred by considering the impact that Plaintiff's position would have on the application of the MDOC's grievance policy. The Court discerns no error. At issue is how to interpret the MDOC's policy from the evidence available. The absurd results that would follow from Plaintiff's interpretation provide additional support for the conclusion reached by the magistrate judge and this Court.

### F. Objection 6

Plaintiff argues that the magistrate judge ignored his argument that a remedy may be unavailable where it is "so opaque that it becomes, practically speaking, incapable of use." *Does*

*8-10 v. Snyder*, 945 F.3d 951, 962-63 (6th Cir. 2019). However, Plaintiff does not adequately explain how that reasoning would alter the outcome of the motion for summary judgment. This is not a case involving "inconsistent statements and positions" or "contradictions and machinations" concerning a grievance remedy for complaints like Plaintiff's. *See id.* at 965. In response to the motion for summary judgment, Plaintiff pointed to conflicting statements by prisoner officials about whether a prisoner can "officially" grieve a transfer (Pl.'s Resp. to Mot. for Summ. J. 12, ECF No. 116), but whether a grievance is "officially" permitted (as opposed to unofficially permitted) is irrelevant. The issue is whether a remedy exists for the grievance.

Other testimony by prison officials offered conflicting opinions about whether transfers were grievable (*see id.*), but as discussed above, the issue in this case is whether a remedy exists for a grievance complaining about circumstances that either put the prisoner at risk of harm or penalized the prisoner for exercising his First Amendment rights. None of the contradictory statements cited by Plaintiff touch on those issues. Thus, the magistrate judge did not err by omitting discussion of Plaintiff's argument.

### G. Objection 7

Plaintiff also objects that the R&R ignored evidence discussed above regarding the unavailability of grievance remedies for contesting facility and cell assignments. On the contrary, the R&R correctly decided that this evidence did not suffice to create a genuine issue of material fact.

Plaintiff contends that the R&R assumed that a remedy was available by relying on Russell's testimony that a prisoner "can make a request on anything." (Russell Dep. 18.) However, this Court understands the difference between making an informal request and filing a grievance for which an administrative remedy is available. The R&R did not conflate the two.

### H. Objection 8

Plaintiff's objection 8 reiterates arguments discussed above, focusing specifically on the burdens of production and persuasion as well as the Rule 56 standard for construing evidence at the summary judgment stage. The Court agrees with the conclusion in the R&R. Drawing all reasonable inferences in favor of Plaintiff, no reasonable jury could find that a remedy was unavailable to him for his complaints.

## II. Retaliation

The R&R also recommends granting summary judgment in favor of Defendants on Plaintiff's retaliation claim regarding his initial placement in protective custody from March 18, 2016, to January 3, 2017. In that claim, Plaintiff contends that Defendant Davids transferred him to protective custody in retaliation for Plaintiff's cooperation with law enforcement in the prosecution of his cellmate and for Plaintiff's interviews with the media about that incident. The R&R concluded that the evidence failed to establish a causal connection between Plaintiff's protected conduct and the decision to place Plaintiff in protective custody. First, the protected conduct occurred years before the decision to place Plaintiff in protective custody. The temporal proximity between the two events was far too weak to reasonably infer causation. Second, the evidence establishes that it was not the conduct itself that motivated the custody decision, but the undisputed *consequences* of that conduct. Plaintiff's conduct made him a visible target for violence from other prisoners. In fact, Plaintiff had been assaulted by other prisoners on other occasions.

Plaintiff nevertheless contends that Davids had other options; he could have transferred Plaintiff to a level I facility where elderly and infirm patients reside rather than a restrictive custody housing unit. However, the R&R noted that there is no evidence that any other prisoner had been transferred to that facility in similar circumstances. The lack of such evidence suggests that this

11

other facility was not an option that Davids would have, or should have, considered. In other words, there was no reason to infer from the mere existence of this other housing option that Davids' decision was retaliatory.

### A. Objection 9

Plaintiff contends that the R&R improperly required a showing of temporal proximity and disparate treatment. To the contrary, the R&R properly concluded that no reasonable jury could infer from the evidence that Plaintiff's protected conduct was a reason for Davids' decision. Temporal proximity and disparate treatment are not necessary to prove retaliatory motive. Other evidence of retaliatory motive may suffice, whether direct or circumstantial. The problem is that Plaintiff's claim lacked any such evidence that would permit a reasonable jury to find in his favor.

## III. Conclusion

For all the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion for leave to file amended objections (ECF No. 125) is **GRANTED**. The Court has considered Plaintiff's amended objections.

**IT IS FURTHER ORDERED** that Plaintiff's amended objections to the R&R (ECF No. 126) are **DENIED** and the R&R (ECF No. 123) is **ACCEPTED** and **ADOPTED** as the Opinion of the Court.

**IT IS FURTHER ORDERED** that, for the reasons herein and in the R&R, Defendants' motion for summary judgment (ECF No. 114) is **GRANTED**.

A judgment will enter consistent with this order.

Dated: January 7, 2021         /s/ Hala Y. Jarbou
                               HALA Y. JARBOU
                               UNITED STATES DISTRICT JUDGE